Claude BAEZA, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15014.

Court of Criminal Appeals of Oklahoma.

April 9, 1969.

James O. Braly, Durant, for plaintiff in error.

G. T. Blankenship, Atty. Gen., for defendant in error.

BUSSEY, Judge.

Claude Baeza, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Bryan County, with the crime of Perjury, After Former Conviction of a Felony. He was tried by a jury, who found him guilty, his punishment fixed at 15 years imprisonment in the State Penitentiary at McAlester, and from the judgment and sentence, he appeals. This prosecution was instituted under the provisions of 21 O.S. § 491, which provides as follows:

> "Whoever, in a trial, hearing, investigation, deposition, certification or declaration, in which the making or subscribing of a statement is required or authorized by law, makes or subscribes a statement under oath, affirmation or other legally binding assertion that the statement is true, when in fact the witness or declarant does not believe that the statement is true or knows that it is not true or intends thereby to avoid or obstruct the ascertainment of the truth, is guilty of perjury. It shall be a defense to the charge of perjury as defined in this section that the statement is true."

The pertinent part of the Information is as follows:

> " * * * That on the 24th day of June, 1968, the said defendant was duly sworn as a witness in the Case of the State of Oklahoma vs. CLAUDE BAEZA, Case No. 5042, said defendant being then and there on trial in the District Court in and for Bryan County, Oklahoma, and

that the said defendant therein testified as follows:

*Page 180 of the Case Made of said trial*

'QUESTION: Will you tell us, then, what occurred when you got to Durant? In your own words?

ANSWER: Well, we went out to Chief's Place. And Jackie opened the trunk of the car, and when I asked him—

QUESTION: (Interrupting) You stopped outside of Chief's Place, and he got out and opened the trunk of the car?

ANSWER: Yeah. He said, "I have got to go in here and bring this man out to the car," and I said, "why?" and he said, "I've got something for him." So, I didn't think anything about it. And he brought Bob Stover out to the car, and in the process, a package was passed between them.'

*Page 181 of the Case Made of said trial*

'ANSWER: Jack demanded the rest of his money, and the man said, "I don't have it, right now. You will have to accept what I've given you," and Jack told him, "well you've got the money. You made the deal, and I want my money. I brought the stuff up here to you." And they—went back inside, and I went inside with them, and I left and come back out to the car. They was still in there arguing.

QUESTION: Just tell us what you saw.

ANSWER: Well, Jackie grabbed him, and started to jump on him, and I jumped out of the car and told Jack to leave the man alone, and "let's get out of here."

*Page 189 of the Case Made of said trial*

'QUESTION: Did you see Jackie Brown with a knife at or about Mr. Stover's throat?

ANSWER: I saw Jackie Brown with a knife in his hand, yes, sir.

QUESTION: Did you see Jackie— was Jackie inside or outside when you first saw this knife?

*Page 190 of the Case Made of said trial*

'QUESTION: You were present when the sweater was torn off, weren't you, Mr. Baeza?

ANSWER: Yes, sir. I was.

QUESTION: How was it torn off?

ANSWER: Jackie grabbed ahold of it. Bob turned—,

That said testimony was material to the issue then on trial, and that said testimony given by said defendant was untrue and false, that said defendant wilfully, knowingly, corruptly and falsely testified as above set forth * * *."

On the trial the State offered into evidence the testimony of the defendant taken under oath in the District Court on the 24th day of June, 1968, which was in accordance with the allegations set forth in the Information. Thereafter, the State offered testimony taken on the 9th day of September, 1968, wherein the State of Oklahoma was Plaintiff and Jackie Brown, alias Jackie Baeza, was Defendant. The pertinent part of said testimony appears in the record at pages 11–113 of the case made, as follows:

"By MR. HATCH:

Q. Mr. [Claude] Baeza, for the record, do you understand that whatever you may say as a witness in this courtroom may be used against you, at any time?

A. Yes, I do.

Q. And you are well aware, then, that you have the right not to testify?

A. Yes, sir.

Q. Then, will you tell us in your own words what occurred on the night of the 14th?

A. On the night of the 14th, Jackie Dean and I came to Durant. I don't think Jack knew what he was doing, even though we came up here. After being up here about two hours and a half, I decided to go rob a place, and I picked out Chief's Drive-In—or Beer Joint. We went in, and I ordered a couple of beers. And—

Q. (Interrupting) Mr. Baeza, may I stop you just a minute. You say you decided to rob the Chief's Place?

A. Yes, sir, I did.

Q. Is this not contrary to—

A. (Interrupting) What I said before? Yes, sir.

Q. (Continuing)—your previous testimony?

A. Yes, sir.

Q. And you have been advised, then, that whatever you say—

A. (Interrupting) Can be used against me, yes, sir.

Q. In a perjury charge?

A. Yes, sir.

Q. All right. Go ahead.

A. We were in there about 15 minutes, or maybe 10, and Jack * * *."

At pages 114–117 of the case made, the following testimony appears:

"By MR. HATCH:

Q. Mr. Baeza, do you recall the testimony of Bob Stover at the previous hearing?

A. Yes, sir I do.

Q. Did he testify that Jackie Dean had a knife?

A. Yes, sir, he did.

Q. And that he threatened Mr. Stover with a knife. Is that true?

A. No, sir, it's not. It's surely not true.

Q. He did not have a knife?

A. No, sir, I had the knife.
* * *

Q. Did Jackie Dean wrestle with the complaining witness outside of Chief's Place?

A. I—was the one that was doing the wrestling with Mr. Stover, out there. Jack never did anything with him.

\* \* \* "

 The defendant's first and second assignments of error are in substance that the evidence is wholly insufficient to support the verdict of the jury. With this contention we do not agree, for it is readily apparent from an examination of the testimony, as above set forth, that the defendant gave the testimony in his trial on the 24th day of June, 1968, as set forth in the Information herein, and thereafter, after having been throughly advised of his constitutional right to remain silent, voluntarily testified on behalf of Jackie Brown, alias Jackie Baeza, that his previous testimony had been perjured and that his testimony might thereafter be used against him.

It is difficult to conceive of a stronger case than that here presented, and we are of the opinion that these assignments are wholly without merit.

It is lastly contended that this charge was laid under the provisions of 21 O.S. § 496 and 21 O.S. § 498(c), and that the same is unconstitutional. Title 21 O.S. § 496 provides:

"Whoever, in one or more trials, hearings, investigations, depositions, certifications or declarations, in which the making or subscribing of statements is required or authorized by law, makes or subscribes two or more statements under oath, affirmation or other legally binding assertion that the statements are true, when in fact two or more of the statements contradict each other, is guilty of perjury."

Title 21 O.S. § 498(c) provides:

"In a prosecution for perjury by contradictory statements, as defined in Section 496 of Title 21, it is unnecessary to prove which, if any, of the statements is not true."

While this charge could have been laid under the provisions of 21 O.S. § 496, supra, as we have heretofore stated, the prosecut-

ing attorney elected to file the same under the provisions of 21 O.S. § 491, supra, as evidenced by the charging part of the Information, and it is immaterial that the evidence which supports this conviction also would have supported a conviction under 21 O.S. § 496 when construed with the provisions of 21 O.S. § 498(c). In the latter instance it would have been unnecessary to show that the defendant admitted the falsity of the testimony previously given.

For the reasons above set forth, we are of the opinion that this assignment of error likewise is without merit, and that the judgment and sentence appealed from should be, and the same is hereby,

Affirmed.

BRETT, P. J., and NIX, J., concur.